Weaver Popcorn Company, Inc. v. Commissioner.
Weaver Popcorn Co. v. Commissioner
Docket No. 2178-69.
United States Tax Court
T.C. Memo 1971-281; 1971 Tax Ct. Memo LEXIS 52; 30 T.C.M. (CCH) 1204; T.C.M. (RIA) 71281; November 2, 1971, Filed. *52 Petitioner corporation during the taxable period had taken interest deductions under section 163(a) for interest paid on debentures it had issued upon its incorporation and a later reorganization. Respondent has denied the deductions on the ground that the debentures represented equity rather than debt instruments. Held, petitioner is entitled to the interest deductions. The debentures in question had a fixed maturity date; there was a certainty of payment of principal and interest, and an absence of voting rights and rights to share in profits of the business. Lester M. Ponder, 1313 Merchants Bank Bldg; Indianapolis, Ind., for the petitioner. James J. McGrath, for the respondent. IRWIN
*53 Memorandum Findings of Fact and Opinion IRWIN, Judge: Respondent has determined deficiencies in petitioner's income taxes as follows: Taxable
Year
Deficiency
1964
$10,224.93
1965
8,953.07
1966
7,819.17 The question presented is whether purported debentures of petitioner, outstanding during the taxable period under scrutiny, are, indeed, in the nature of indebtedness. Petitioner has treated the debentures as debt and has taken interest deductions under section 163(a) [1] for interest paid during the taxable period. Respondent, on the other hand, has disallowed the deductions, contending that the debentures are in the nature of an equity interest and, therefore, the amounts paid during the taxable period are dividends not entitling petitioner to any tax deduction. Findings of Fact Many of the facts have been stipulated by the parties. These facts, along with the exhibits attached thereto, *54 are incorporated herein by this reference. Weaver Popcorn Company, Inc., the petitioner, is a corporation duly authorized under the laws of the State of Indiana. Its principal business situs is Van Buren, Ind. Petitioner is engaged in the business of growing and processing popcorn. The business was a risky one and there was a constant concern about cash flow and available capital. Its accounting system is the accrual method and its books are kept on the basis of a calendar year ending December 31. Petitioner filed its tax returns for the taxable period with the district director of internal revenue in Indianapolis, Ind.
Petitioner, a closely held family corporation, was the successor to a partnership composed of I. E. Weaver; his sons, P. L. ("Paul") Weaver and W. I. ("Welcome") Weaver; and his son-in-law, D. Meredith Repp. I. E. Weaver is the husband of Della Weaver and his daughter, Mabelle, is married to D. Meredith Repp. Prior to 1955, the partners had discussions regarding the future of the business. I. E. Weaver, about 70 years old at the time, wanted more security for his later years and wanted to take a less active role in management. I. E. and Paul had extensive property *55 interests which were at the risk of the business' success. All the partners were concerned about the continuity of the business should one of the partners die or wish to leave the business. The partners sought legal and accounting advice about incorporation, a logical solution to their concern, and the financial structure which would be born from such an incorporation. 1205 After weighing the advice of their counselors, the partners decided to organize petitioner. The incorporation took place on June 1, 1955, with a financial structure consisting of ten-year debentures and one class of common stock. The debentures and stock were issued in exchange for the partners' capital interest in the partnership. The following is a schedule of the partnership's balance sheet at the time of incorporation and the financial structure which resulted from the incorporation: 6-1-55
Partnership
Debit
Credit
Corporation
CURRENT ASSETS:
Cash
$ 19,064
$ 19,064
Accounts
65,344
65,344
receivable
Inventories
241,988
241,988
Prepaid property
3,792
3,792
tax
$330,188
$330,188
CURRENT
LIABILITIES:
Notes
$160,000
$160,000
payable-banks
Loans
payable-partners:
I. E. Weaver
11,000
11,000
D. M. Repp
2,000
2,000
Accrued expenses
10,805
10,805
$183,805
$183,805
NET WORKING
$146,383
$146,383
CAPITAL
FIXED ASSETS:
Land
$ 1,362
$ 1,362
Buildings,
206,967
206,967
equipment, etc.
$208,329
$208,329
Less depreciation
80,634
80,634
$127,695
$127,695
ASSETS LESS
CURRENT
*13LIABILITIES
$274,078
$274,078
6-1-55
Partnership
Debit
Credit
Corporation
DEBENTURES:
I. E. Weaver
$ 74,644.69
$ 74,644.69
P. L. Weaver
23,544.69
23,544.69
W. I. Weaver
23,544.69
23,544.69
D. M. Repp
23,544.69
23,544.69
$145,278.76
$145,278.76
COMMON STOCK:
I. E. Weaver
1,000.00
1,000.00
P. L. Weaver
42,600.00
42,600.00
W. I. Weaver
42,600.00
42,600.00
D. M. Repp
42,600.00
42,600.00
$128,800.00
$128,800.00
$274,078.76
$274,078.76
PARTNERS'
CAPITAL:
I. E. Weaver
$ 75,644.69
$ 75,644.69
P. L. Weaver
66,144.69
66,144.69
W. I. Weaver
66,144.69
66,144.69
D. M. Repp
66,144.69
66,144.69
$274,078.76
$274,078.76
*56 The debentures issued by petitioner at the time of incorporation were in the following form: WEAVER POPCORN COMPANY, INC. FIVE PER CENT TEN YEAR DEBENTURE WEAVER POPCORN COMPANY, INC. (hereinafter called the "Corporation") For Value Received, hereby promises to pay to * * * [name of payee], or order, ten years from the 1st day of June, 1955, unless this Debenture shall have been sooner redeemed, * * * [amount] 1206 in legal currency of the United States of America, and to pay interest thereon from date debenture was executed, at the rate of five per cent per annum, such interest to be payable annually in legal currency on the 1st day of June, in each year. Both the principal and interest of this debenture shall be payable at the office of the corporation. The rights of the holder hereof to the principal sum on any part hereof, and the interest due thereon, is, and shall remain subject and subordinate to the claims of all banks or banking institutions which are creditors in any way of the corporation and upon dissolution or liquidation of the corporation no payment shall be due or payable upon this debenture until all claims of any bank or banking institution against *57 said corporation shall have been paid in full. The right is reserved hereby to the corporation at any time upon giving 30 days notice in writing of its intention to do so, to redeem any or all of said five per cent debentures at such time outstanding by the payment of the par value thereof plus accrued interest to the date of such redemption. This Debenture is transfer able only on the books of the corporation in person or by duly authorized attorney upon surrender of this debenture properly endorsed. These debentures afforded the holders thereof no voting rights in petitioner and gave no right to share in corporate profits. The farming aspects of petitioner's business were conducted by Weco Farms, a partnership operated and owned equally by the four original partners in petitioner. In 1959, as part and parcel of revised corporate planning, petitioner was reorganized in order to facilitate an acquisition of Weco Farms and bring the farming end of the business under petitioner's roof. As in 1955, the partners sought limited liability and continuity with respect to the Weco business. By action of the board of directors on December 30, 1959, petitioner caused its articles of incorporation *58 to be amended to provide for two classes of common stock (class A and class B) and a class of preferred stock in lieu of the extant single class of common stock. On January 4, 1960, petitioner acquired Weco's assets and liabilities by issuing to Weco's partners ten-year debentures, preferred stock, and class A common stock. The Weco acquisition was accomplished by the following balance sheet entries by petitioner: TRANSACTIONS AT 1-4-60--ACQUISITION OF
WECO FARMS PARTNERSHIP AND RECAPITALIZATION
Debit
Credit
Cash
$ 133.00
Inventories
23,215.00
Accounts payable
$ 2,916.00
Farms
307,452.00
Reserve for depreciation
48,532.00
Mortgage on farms
57,250.00
Partnership capital--
I. E. Weaver
55,525.40
P. L. Weaver
55,525.40
W. I. Weaver
55,525.40
D. M. Repp
55,525.40
To reflect acquisition of Weco
partnership
$330,800.00
$330,799.60
Partnership capital--
I. E. Weaver
$ 55,525.40
P. L. Weaver
55,525.40
W. I. Weaver
55,525.40
D. M. Repp
55,525.40
Debentures payable:
I. E. Weaver
$ 54,725.40
P. L. Weaver
26,325.40
W. I. Weaver
26,325.40
D. M. Repp
26,325.40
Preferred stock:
P. L. Weaver
29,200.00
W. I. Weaver
29,200.00
D. M. Repp
29,200.00
Class A stock:
I. E. Weaver
800.00
To reflect issuance of stock and
securities for farms under Sec.
351
$222,101.60
$222,101.60
Debit
Credit
Loans from Weco partnership--
$131,500.00
Debentures payable:
I. E. Weaver
$ 32,875.00
P. L. Weaver
32,875.00
W. I. Weaver
32,875.00
D. M. Repp
32,875.00
Original common stock:
I. E. Weaver
1,000.00
P. L. Weaver
42,600.00
W. I. Weaver
42,600.00
D. M. Repp
42,600.00
Preferred stock:
I. E. Weaver
$ 1,600.00
P. L. Weaver
28,400.00
W. I. Weaver
28,400.00
D. M. Repp
28,400.00
Class A stock:
P. L. Weaver
10,000.00
W. I. Weaver
10,000.00
D. M. Repp
10,000.00
Class B stock:
P. L. Weaver
4,000.00
W. I. Weaver
4,000.00
D. M. Repp
4,000.00
To reflect recapitalization
*59 The balance sheet of petitioner following the Weco acquisition was as follows: BALANCE SHEET REFLECTING
WECO FARMS ACQUISITION 1960
After
Acqui-
sition and
Recapitali-
12-31-59
Debit
Credit
zation
CURRENT ASSETS:
Cash
$ 48,844.00
$ 133.00
$ 48,977
Accounts receivable
123,308.00
123,308
Inventories
538,400.00
23,215.00
561,615
$710,552.00
$ 23,348.00
$733,900
CURRENT LIABILITIES:
Notes payable, bank
$340,000.00
$340,00
Accounts payable
3,985.00
$ 2,916.00
6,901
Accrued expenses
14,045.00
14,045
Income tax
18,382.00
18,382
Loans, shareholders:
I. E. Weaver
35,880.00
35,880
D. M. Repp
2,500.00
2,500
Weco Farms partnership
131,500.00
$131,500.00
$546,292.00
$131,500.00
$ 2,916.00
$417,708
NET WORKING CAPITAL
$164,260.00
$154,848.00
$ 2,916.00
$316,192
FIXED ASSETS:
Land
$ 3,012.00
$ 3,012
Buildings, equipment, etc.
321,051.00
321,051
$324,063.00
$324,063
Less depreciation
(192,870.00)
(192,870)
$131,193.00
$131,193
Farm land
$ 6,800.00
$142,012.00
$148,812
Depreciable assets
165,440.00
165,440
Less depreciation reserve
$ 48,532.00
(48,532)
$307,452.00
48,532.00
$265,720
OTHER ASSETS:
Investment in subsidiary
$ 79,055.00
$ 79,055
FARM MORTGAGE
$ 57,250.00
[57,250)
ASSETS LESS CURRENT
LIABILITIES AND MORTGAGE
$381,308.00
$462,300.00
$108,698.00
$734.910
WECO PARTNERSHIP:
Loans to Weaver Popcorn
$131,500.00
$131,500.00
Other assets
282,267.98
282,267.98
Accounts payable
(2,916.38)
$ 2,916.38
Mortgage
(57,250.00)
57,250.00
$353,601.60
$ 60,166.38
$413,767.98
Partners' Capital:
I. E. Weaver
$ 88,400.40
$ 55,525.40
32,875.00
P. L. Weaver
88,400.40
55,525.40
32,875.00
W. I. Weaver
88,400.40
55,525.40
32,875.00
D. M. Repp
88,400.40
55,525.40
32,875.00
$353,601.60
$353,601.60
DEBENTURES:
I. E. Weaver
$ 47,644.69
$ 32,875.00
54,725.40
$135,245
P. L. Weaver
34,544.69
32,875.00
26,325.40
93,745
W. I. Weaver
28,544.69
32,875.00
26,325.40
87,745
D. M. Repp
23,544.69
32,875.00
26,325.40
82,745
Mrs. D. M. Repp
11,000.00
11,000
$145,278.76
$265,201.60
$410,480
PREFERRED STOCK (NON-VOTING
$100 PAR):
I. E. Weaver
$ 1,600.00
$ 1,600
28,400.00
P. L. Weaver
29,200.00
57,600
28,400.00
W. I. Weaver
29,200.00
57,600
28,400.00
D. M. Repp
29,200.00
57,600
$174,400.00
$174,400
CLASS A STOCK (VOTING -
$10 @PAR):
I. E. Weaver
$ 800.00
$ 800
P. L. Weaver
10,000.00
10,000
W. I. Weaver
10,000.00
10,000
D. M. Repp
10,000.00
10,000
$ 30,800.00
$ 30,800
COMMON STOCK (NON-VOTING -
NO PAR):
I. E. Weaver
$ 1,000.00
$ 1,000.00
P. L. Weaver
42,600.00
42,600.00
$ 4,000.00
$ 4,000
W. I. Weaver
42,600.00
42,600.00
4,000.00
4,000
D. M. Repp
42,600.00
42,600.00
4,000.00
4,000
$128,800.00
$128,800.00
$ 12,000.00
$ 12,000
RETAINED EARNINGS
$107,229.52
$107,230
$381,308.28
$734,910
*60 1209 Note: Changes in debentures from June 1, 1955 to December 31, 1959 were due to gifts by I. E. Weaver to: P. L. Weaver $11,000 W. I. Weaver 5,000 Mrs. D. M. Repp 11,000 $27,000 The 1960 issue of debentures was identical in form and terms to the 1955 issue except for the maturity date. Interest on these debentures was payable on January 4 of each year. Petitioner requested a ruling from the Internal Revenue Service on November 13, 1964, as to a tax-free separation of the farm division of the company from the corporate shell. Paul, who managed the farm division, and Welcome, in charge of sales and management of the popcorn phase of the business had disagreed on the future development of the business. A tax-free "spin-off" under section 355 of the Internal Revenue Code was the solution agreed upon, and then suggested in a ruling request to the Internal Revenue Service. On June 11, 1965, a favorable ruling for the spin-off was issued by the Service. Accordingly, in March 1965, Paul relinquished his stock ownership in petitioner for stock in the new farm division, and all of his debentures, both the 1955 and 1960 issues, were redeemed in the *61 amount of $90,745.09. As a result of redeeming Paul's debentures, the petitioner was in need of cash. Plans were then made to renew the June 1, 1955, debentures when the maturity date therefor arose. Except for $51,744.69 of the debentures described hereinbelow, petitioner's debentures issued June 1, 1955, which were outstanding and mature on June 1, 1965, were returned to petitioner and the words, "Paid by renewal debenture due June 1, 1975" were written thereon. New debentures were thereupon issued, dated June 1, 1965, payable June 1, 1975. The exceptions to renewal were as follows: (1) On or about January 22, 1963, Paul L. Weaver, Welcome I. Weaver, and Mabelle Repp each delivered to petitioner debentures in the amount of $5,000 issued June 1, 1955, aggregating $15,000. In lieu thereof, petitioner thereupon issued debenture #30-A to The Methodist Memorial Home for the Aged, Warren, Ind., in the face amount of $12,000, with due date of 1210 January 22, 1973, and the debentures #31-A, #32-A and #33-A, each in the face amount of $1,000, with maturity date of January 22, 1973, to Paul L. Weaver, Welcome I. Weaver and Mabelle Repp. (2) On or about May 31, 1965, I. E. Weaver *62 delivered to petitioner debentures issued June 1, 1955, aggregating $17,100. In lieu thereof, petitioner thereupon issued to I. E. Weaver debenture #39-A in the face amount of $2,100 and debentures #40-A, #41-A and #42-A, each in the face amount of $5,000, aggregating $17,100, all with maturity date of January 1, 1969. (3) On or about December 1, 1959, I. E. Weaver delivered to petitioner debentures issued June 1, 1955, aggregating $15,000. In lieu thereof, petitioner thereupon issued debentures #37, #38 and #39, each in the face amount of $5,000, with maturity date of December 1, 1969, to Paul L. Weaver, Mabelle Repp and Welcome I. Weaver, respectively. (4) On or about January 2, 1961, I. E. Weaver delivered to petitioner debenture #15 issued June 1, 1955, in the face amount of $4,644.69. In lieu thereof petitioner issued debenture #41 to Mabelle Repp in the face amount of $3,700, with maturity date of January 2, 1971, and debenture #42 to I. E. Weaver in the face amount of $944.69, with maturity date of January 2, 1971. During the year 1964 and until August 1965, petitioner had a line of credit with American Fletcher National Bank & Trust Company of Indianapolis, Ind., in the *63 amount of $740,000 and with The First National Bank in Huntington of $60,000. In order to obtain this line of credit, it was necessary for the principal shareholders of petitioner to guarantee such indebtedness. There was also a continuing guaranty with The First National Bank in Huntington dated September 1, 1961, executed by petitioner's principal shareholders. Each such continuing guaranty was in effect from such date to August 1965. From August 1965 to and including December 31, 1966, petitioner had a line of credit with American Fletcher National Bank & Trust Company and the The First National Bank in Huntington in the aggregate amount of $880,000. Such continuing guaranty was in effect to and including December 31, 1966. It was necessary for petitioner's principal shareholders to guarantee such indebtedness in order for petitioner to obtain this line of credit. In connection with the line of credit extended in 1965, the banks also required Welcome I. Weaver and Mabelle W. Repp, two of petitioner's principal shareholders, to execute a negative pledge agreement. The subordination to the banks on the other hand was not "complete," and did not prevent petitioner from paying interest *64 on the obligations. The interest was, in fact, paid by petitioner during the taxable period, but the payments were generally made at the end of the taxable year, rather than on the scheduled payment dates. Petitioner's notes payable during 1964, 1965, and 1966 were as follows: American
First
Fletcher
National
National Bank
Bank
I. E.
W. I.
P.l.
Date
Account 301
Indianapolis
Huntington
Weaver
Weaver
Weaver
1-1-64
Balance
$ 500,000
$ 120,000
$ 31,200
$ 15,400
1964
Less:
(600,000)
(120,000)
(4,200)
(10,400)
(7,686.44)
Repayments
1964
Plus:
300,000
120,000
10,000
7,686.44
Borrowings
12-31-64
Balance
200,000
120,000
27,000
15,000
1965
Less:
(200,000)
(120,000)
(2,000)
Repayments
1965
Plus:
250,000
120,000
3,000
8,000
Borrowings
12-31-65
Balance
250,000
120,000
30,000
21,000
1966
Less:
(250,000)
(120,000)
(55,000)
(2,000)
Repayments
1966
Plus:
300,000
120,000
25,000
12,000
Borrowings
12-31-66
Balance
300,000
120,000
31,000
B and L
Account
D.M.
Weaver
R.L. & W.
Popcorn
301
Date
Account 301
Repp
Farms
Feeds
Co.
Total
1-1-64
Balance
$20,810.90
$ 687,410.90
1964
Less:
(5,497.34)
(60,000)
(807,783.78)
Repayments
1964
Plus:
7,686.44
60,000
505,372.88
Borrowings
12-31-64
Balance
23,000.00
385,000.00
1965
Less:
(2,000.00)
(324,000.00)
Repayments
1965
Plus:
6,626.00
387,626.00
Borrowings
12-31-65
Balance
27,626.00
448,626.00
1966
Less:
(1,626.00)
(428,626.00)
Repayments
1966
Plus:
7,000.00
25,000
50,000
539,000.00
Borrowings
12-31-66
Balance
33,000.00
25,000
50,000
559,000.00
*65 Date
Account 301
Banks
Stockholders
Others
1-1-64
Balance
$ 620,000
$ 67,410.90
1964
Less: Repayments
(720,000)
(27,783.78)
(60,000)
1964
Plus: Borrowings
420,000
25,372.88
60,000
12-31-64
Balance
320,000
65,000.00
1965
Less: Repayments
320,000
(4,000.00)
1965
Plus: Borrowings
370,000
17,626.00
12-31-65
Balance
370,000
78,626.00
1966
Less: Repayments
(370,000)
(58,626.00)
1966
Plus: Borrowings
420,000
44,000.00
75,000
12-31-66
Balance
420,000
64,000.00
75,000
Date
Account 301-A
Della Weaver
1-1-64
Balance
$20,000
12-31-64
Balance
20,000
12-31-65
Balance
20,000
12-31-66
Balance
20,000
Popping
Date
Account 302
Products
12-31-64
Balance
$37,625
1966
Less: Repayments
11,500
1966
Plus: Borrowings
12-31-66
Balance
26,125
Interest on debentures was paid as follows: 6-1-55
Debentures
Date
and 6-1-65
1-4-60
Interest
Holder
Debentures
Debentures
Total
Paid
1964
I. E. Weaver
$2,047.23
$ 4,380.00
$ 6,427.25
12-8
P. L. Weaver
1,577.23
2,960.02
4,537.25
12-8
W. I. Weaver
1,027.23
2,460.02
3,487.25
12-8
Pat S. Weaver
250.00
250.00
11-13
D. M. Repp
1,177.23
2,960.02
4,137.25
12-8
Mabelle Repp
585.00
585.00
12-8
Adah Weaver
M. E. Weaver
250.00
250.00
11-13
Barbara Weaver
250.00
250.00
11-13
$3,663.92
$13,260.08
$19,924.00
Methodist Home
600.00
12-8
1965
I. E. Weaver
$ 902.23
$ 4,380.02
$1,000.00
8-6
2,000.00
11-30
2,282.25
$5,282.25
12-20
P. L. Weaver
284.79
534.41
819.20
3-24
W. I. Weaver
1,199.73
2,460.02
$2,000.00
11-23
1,659.75
3,659.75
12-20
Pat S. Weaver
250.00
250.00
10-18
D. M. Repp
1,477.23
2,960.02
4,437.25
12-20
Mabelle Repp
957.50
957.50
12-20
Adah Weaver
300.00
300.00
12-20
M. E. Weaver
250.00
250.00
10-18
Barbara Weaver
250.00
250.00
12-20
$5,371.48
$10,834.47
$16,205.95
Methodist Home
600.00
12-20
1966
I. E. Weaver
$ 902.23
$ 4,380.02
$ 5,282.25
12-7
W. I. Weaver
1,199.73
2,460.02
[2] $2,737.37
6-30
1,451.19
3,659.75
11-16
Pat S. Weaver
250.00
250.00
D. M. Repp
1,477.23
2,960.02
[2] $3,126.13
7-20
3,291.12
4,437.25
12-7
Mabelle Repp
957.50
957.50
12-7
Adah Weaver
300.00
300.00
12-7
M. E. Weaver
250.00
250.00
12-5
Barbara Weaver
250.00
250.00
12-7
$5,086.69
$10,300.06
$15,386.75
*66 1212 Although a risky business, petitioner had always shown a profit and continued to do so during the taxable period. Petitioner has declared no dividends since it was organized. Further, the parties have agreed that petitioner was not "thinly incorporated." Respondent has disallowed petitioner's interest deductions for the taxable period, asserting that the debentures were in the nature of an equity interest. Respondent, on the other hand, has not disallowed petitioner's claimed deductions for each of the taxable years 1964 and 1965 for interest paid in the amount of $600 on its debentures in the face amount of $12,000 held by The Methodist Memorial Home for the Aged of Warren, Ind. Such debentures were received by the home from Paul L. Weaver, Welcome I. Weaver and Mabelle Repp in the face amount of $4,000 from each. Ultimate Findings of Fact We find the debentures in question here to be in the nature of indebtedness and that petitioner is entitled to its interest deductions for the taxable period. This holding is based on the presence of four *67 crucial factors: (1) a fixed maturity date; (2) a certainty of payment of principal; (3) a certainty of payment of interest; and (4) an absence of either voting rights or a right to share in petitioner's profits attendant to the holding of the debentures. Additionally, but peripheral to our holding, we also find the following: (1) the intent to construct a debt interest; (2) the absence of a tax avoidance motive; and (3) a business purpose for the corporate financial structure formed by the partners. Opinion The sole issue to be resolved is the deductibility of interest paid by petitioner during the taxable period to holders of its debentures, except for those debentures held by The Methodist Memorial Home for the Aged. The debentures in question were issued by petitioner at two points in time: (1) upon the incorporation of petitioner on June 1, 1955; and (2) on January 4, 1960, in conjunction with a reorganization of petitioner and petitioner's acquisition of Weco Farms. The classic debt is "an unqualified obligation to pay a sum certain at a reasonably close fixed maturity date along *68 with a fixed percentage in interest payable regardless of the debtor's income or lack thereof." Gilbert v. Commissioner, 1213 248 F. 2d 399, 402-403 (C.A. 2, 1957). Although many factors can be scrutinized in order to draw the line between indebtedness and equity, there is no one characteristic which is decisive in making the determination of whether obligations are, in reality, risk investments in the corporation or debts. John Kelley Co. v. Commissioner, 326 U.S. 521 (1946). As a preliminary matter, the following should be noted: on their face, the debentures did contain an unconditional promise to repay the principal at a fixed maturity date with interest set at five percent per annum. Of course, since this matter of form is just one of several factors we must review, it is not determinative of the issue involved. Charles E. Curry, 43 T.C. 667 (1965). Further, we are convinced on the evidence that the partners did intend to create debt obligations upon the issuance of the debentures. Again, however, this alone does not control our decision. Debtors are entitled to choose the debt route so long as they satisfy requirements which we *69 consider important and which will be discussed in more detail, infra. Still further, we are convinced from the record that the debentures here bore a reasonable interest rate. This is a factor in petitioner's favor. Finally, we are satisfied that the partners' business reasons for incorporating and then reorganizing and acquiring Weco Farms with the use of stock and debentures were sound and bona fide. Respondent has set forth eight contentions supporting his denial of petitioner's interest deductions. We will consider his assertions seriatim since they focus on the factors which we must consider to determine whether petitioner's debentures were in the nature of debt or equity. Respondent first questions what he feels to be inordinate tax planning at the time of incorporation of petitioner. We are not disturbed that petitioner's advisers paid much attention to the tax aspects of corporate solution. The advisers would be remiss not to discuss tax advantages and disadvantages at great length with the partners. We are satisfied on the record that all phases of incorporation were considered by the advisers and the partners and that the corporate scheme devised was bona fide, accomplished *70 the goals which the partners were seeking, and was devoid of any intent to reap an overwhelming tax advantage. The debt and stock issued by petitioner in 1955 upon incorporation and in 1960 upon reorganization was not held proportionally by the family members. Respondent, however, next contends that because one family unit is involved, the disproportionate holding has no significance. The debentures and stock were issued in 1955 and 1960 in accordance with the special needs of each of the partners. For example, I. E. Weaver's holdings consisted mostly of debt because of his advancing age and his desire for retirement security. That there is a familial similarity in the ownership of the debentures and stock is not a factor in respondent's favor here. To hold that where one family unit is concerned, and solely for that reason, disproportionate debt and equity holdings are of no consequence, would be to prevent closely held companies from adequately achieving their goals and planning for the future of their companies. This argument would be more telling if other factors were present strongly indicating an equity interest. Third, respondent contends that the debentures lacked a fixed *71 maturity date because of their subordination to large bank loans. Specifically, the debentures do provide for subordination of principal and interest to the banks upon dissolution or liquidation of the corporation. Absent that circumstance, however, petitioner was perfectly free to make interest and principal payments. No absolute or complete prohibition from making repayment of the debentures or from paying interest arose from the petitioner's incurrence of bank debt. The subordination here is an "inchoate" subordination rather than a "complete" subordination, the latter being of the sort which would totally circumscribe principal and interest payments. [3] In fact, petitioner has made interest payments yearly on the debentures. The extension of the June 1, 1965, maturity date on the 1955 debenture issue was necessitated by valid business reasons and does not render the maturity date of the 1955 issue uncertain. Fourth, respondent argues that the debenture holders did not have the right to share in liquidation with the unrelated creditors. We lend no credence to this 1214 point since, on *72 the record, we are satisfied that there was no absence of this right among the debenture holders. Next, respondent contends that the debenture should not be accorded debt treatment because of their lack of "normal" creditor safeguards, i.e., a lack of certain security devices. That the debentures here do not spell out certain of these so-called safeguards, e.g., the right to enforce payment of interest or principal, is somewhat insignificant here. Respondent's notion would be more compelling had petitioner not been a closely held, family corporation. Given such a closely held, family corporation, however, as a general rule it is unlikely that the need for such devices would ever arise. Indeed, the record is clear that, during the corporate life of petitioner, there has never been the need for such a right. Respondent's sixth assertion focuses on petitioner's failure to pay dividends while making its interest payments on the debentures at the end of each tax year rather than on the precise monthly due date therefor. The absence of dividends is directly attributable to petitioner's cash flow problems and this represents a valid reason for such absence. Although paid at the end of *73 each year, the interest was, indeed, paid. Respondeent then questions the 1965 extension of the maturity date of the 1955 issue of debentures. Respondent implies that this extension tends to make uncertain the fixed maturity date we must find in order to determine whether indebtedness rather than stock exists. The extension was accomplished with renewal debentures, not in question here, which are in substance, identical to the 1955 and 1960 issues. Again, we are satisfied that the extension was necessitated by business difficulties and did not impart a cast of equity over the debentures. Finally, respondent contends that at the time of the spin-off of the farm division to Paul in 1964, there was a similar treatment of Paul's debentures and stock and that this indicates that the debentures were not true debt. However, we find the record clear that Paul's stock and debt were treated disparately at that time and that the spin-off mechanics in no way impugn the indebtedness nature of the debentures. The debentures were redeemed and cancelled. The stock was not, however, redeemed and cancelled. Following the spin-off, as before that transaction. Paul retained stock in corporate solution. *74 Petitioner's debentures in this case evidenced an indebtedness interest. The debentures possessed a fixed maturity date; there was a certainty of payment of interest and principal; and the debenture holders did not possess voting rights or a right to share in petitioner's profits. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Balance on notes.↩
3. Cf. "Subordination Agreements," 70 Yale L.J. 376, 377-378↩ (1961).